UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**JERRY HIGGINS**  PLAINTIFF

v.  No. 5:22-cv-88-BJB

**THE LINCOLN ELECTRIC CO.**  DEFENDANT

\* \* \* \* \*

MEMORANDUM OPINION & ORDER

Jerry Higgins sued The Lincoln Electric Company and MetLife, alleging they violated ERISA by limiting him to $60,000 in annual long-term disability benefits after Lincoln previously said he was entitled to $92,260.80. Both defendants moved to dismiss the suit for failure to state a claim. The Court previously granted MetLife's motion to dismiss and now grants Lincoln's.

I.

Higgins worked as a sales representative for The Lincoln Electric Company. Lincoln sponsors an ERISA-governed long-term benefits plan for its employees under a policy issued by MetLife. The plan itself unambiguously states that Higgins is entitled to a maximum benefit of $5,000 per month.[1] But Higgins apparently received a benefit statement from Lincoln in July 2017 advertising that he was eligible for $92,260.80 in annual disability benefits. Complaint (DN 1) ¶ 18; Benefits Statement (DN 1-1).[2] The next month he applied for long-term disability benefits. Complaint

---

[1] The relevant provision states:

Monthly Benefit – You may choose the amount of your insurance from one of the following plans set forth below: Core Plan – Noncontributory Insurance: 60% of the first $5,555 of Your Predisability Earnings, subject to the income which will reduce your disability benefit section; Buy Up Plan – Contributory Insurance: 60% of the first $8,333 of Your Predisability Earnings, subject to the income which will reduce your disability benefit section.

Plan Booklet (DN 6-2) at 22 (cleaned up). The plan proceeds to outline the maximum monthly benefits: "Maximum Monthly Benefit: – Core Plan – Noncontributory Insurance: $3,333; Buy Up Plan – Contributory Insurance: $5,000." *Id.* at 22 (cleaned up). And then it specifies the maximum benefit period, which varies depending on when the beneficiary becomes disabled. *Id.* at 23.

[2] The relevant provision states: "Long-Term Disability: Basic Coverage (60% of earning after 6 months of disability): $69,195.6; Supplemental Coverage: $ 23,065.20." Benefits Summary at 3 (cleaned up).

1

¶ 15. MetLife, however, told him he would only receive $60,000 per year. Complaint ¶ 17; Lincoln MTD Br. (DN 12-1) at 1–2; Plan Booklet (DN 6-2) at 22.

In January 2022, Higgins' lawyer asked MetLife for the "administrative record" of his 2017 claims and demanded payment of the higher benefits amount listed in the July 2017 statement. Complaint ¶ 19. MetLife initially did not respond, and later told Higgins that he should submit his requests to Lincoln instead. ¶¶ 20, 22. But when Higgins contacted Lincoln, it sent him back to MetLife. ¶ 24. Dissatisfied, Higgins sued both MetLife and Lincoln, alleging ERISA violations.

Higgins asserts five claims against Lincoln:

(1) breach;

(2) material misstatement/estoppel;

(3) a statutory-damages claim under § 1332(c) for late documents;

(4) another § 1332(c) claim for late responses to benefit claims; and

(5) attorney's fees.

Lincoln has moved to dismiss (DN 12) all five as a matter of law under Federal Rule of Civil Procedure 12(b)(6).[3]

These claims fail. Higgins' central contention is that because Lincoln misstated his benefits it must pay him that amount. That is wrong. Higgins hasn't pointed to anything indicating that Lincoln tried to trick him or that Higgins relied to his detriment on the July mailing. He merely asserts (without factual support) that he considered buying supplemental insurance but didn't because of the mailing stating he was covered to the tune of $92,000 rather than $60,000.

None of his ancillary claims survive, either: Higgins has abandoned his contract claim, he lacks a cause of action based on his lack of access to the claim file, and his request for attorney fees falls away because he hasn't succeeded on his underlying claims.

## II.

"[T]o survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addressing a motion to dismiss, the Court views the complaint in the light most

---

[3] MetLife separately moved to dismiss Higgins's claims against it, and the Court has already granted its motion in a prior decision. *See* Mem. Op. & Order (DN 21).

favorable to the plaintiff and accepts as true all well-pled factual allegations in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).

None of Higgins's five claims rest on plausible factual allegations that would support recovery against Lincoln.

**1. Breach.** Higgins first claims that he is "entitled to the [long-term disability] coverage identified in the Benefit Summary," and that "Lincoln has breached the agreement by failing to provide the agreed upon benefits." Complaint ¶¶ 29–30. Lincoln moved to dismiss this claim, and Higgins's response brief failed to address it, so he has "conceded the issue and abandoned" the claim. Reply (DN 20) at 3–4 (quoting *Bradley v. Jefferson County Pub. Schools*, No. 3:20-cv-450, 2022 WL 1138150, at *11 (W.D. Ky. Apr. 18, 2022)).

The breach claim would fail anyway. Section 1132(a)(1)(B) authorizes a plaintiff "to recover benefits due to him *under the terms of his plan*." (emphasis added). Here, the Plan Booklet—not the Benefit Election form—defines the terms of Higgins's plan.

"The plan … is at the center of ERISA." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013). Section 1132(a)(3) "countenances only such relief as will enforce *the terms of the plan*." *Id.* at 100 (quotations omitted); *see also Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) ("ERISA … [is] a scheme that is built around reliance on the face of written plan documents."). Here, the plan (as outlined in the January 2016 plan booklet) unambiguously entitles Higgins to only the $60,000 per year he received. *See* Plan Booklet at 22 (setting out maximum long-term disability benefit of $5,000 per month).

The erroneous Benefit Election Form, by contrast, is not a plan document, so failure to honor it does not breach the plan agreement. "[S]ummary documents" (like the benefits form) "provide communication with beneficiaries *about* the plan, but … their statements do not themselves constitute the *terms* of the plan" subject to enforcement in an ERISA suit. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). Higgins doesn't offer any reason why the Benefit Election Form should be considered a plan document or a modification of the plan. *See Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010). Summary plan descriptions, the Sixth Circuit has made clear, "are not legally binding, nor parts of the benefit plans themselves." *Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 620 (6th Cir. 2013) (quotations omitted).

**2. Estoppel**. Higgins next says he relied on the promise of a higher payout contained in the Benefit Election Form—and therefore should be entitled to that higher payout as a matter of law.[4] This application of estoppel principles is hardly

---

[4] The claim indisputably accrued between three and five years before Higgins filed the complaint. Lincoln raises a statutory statute-of-limitations argument in the motion to

unknown to the world of ERISA, given its roots in equity, but sits in tension with the primacy of the plan discussed above.  In some limited circumstances, an ERISA long-term welfare-plan beneficiary—such as Higgins—may bring an estoppel claim against the plan administrator to trump the plan's terms against him.[5]  *See, e.g.*, *Bloemker*, 605 F.3d at 442–44.

But the showing is not easy.  The party asserting estoppel must establish five elements: (1) "conduct or language amounting to a representation of material fact," (2) "awareness of the true facts" by the party to be estopped, (3) "intent that the representation be acted on" by the party to be estopped or "reasonable belief" of that intent by the party asserting estoppel, (4) "unawareness of the true facts" by the party asserting estoppel, and (5) reasonable or justifiable reliance to his detriment by the party asserting estoppel.  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (cleaned up).

The Benefit Election Form undoubtedly represents a material fact.  So the first element favors Higgins.  But that is the only element that tips his way.

The second "requires the plaintiff to demonstrate that the defendant's actions 'contained an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud.'"  *Bloemker*, 605 F.3d at 443 (cleaned up) (quoting *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007)).  Estoppel in this context can't rest on "an honest mistake."  *Crosby*, 480 F.3d at 431.[6]  True, Lincoln admits it made a "significant misstatement" in the Benefit Election Form.  Complaint ¶ 27.  But no allegation indicates that Lincoln acted fraudulently or with gross negligence.  *See* Complaint ¶¶ 32–35.  And Higgins characterizes Lincoln's behavior quite differently—as mere "carelessness."  Response at 2.

Higgins also contends that Lincoln's "knowledge" of the true facts is evident because of the "date of the statement, the party making the statement, the statement's contents, and the false nature of the statement."  *Id.* at 6.  How this would

---

dismiss and an additional contractual point in reply; Higgins, meanwhile, barely responds.  Because the timeliness issue is both unclear and unnecessary to granting this motion, the Court won't pass on it.

[5] The Sixth Circuit "treat[s] the theories of promissory estoppel and equitable estoppel interchangeably" in ERISA cases.  *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 578 (6th Cir. 2013) (Stranch, J., concurring in part and dissenting in part).  So in the interest of economy and clarity, this opinion just uses "estoppel."

[6] Lincoln argues that FED. R. CIV. P. 9(b) applies to this element because Higgins is asserting fraud.  Lincoln MTD Br. at 13.  That heightened pleading standard would require him to "state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  Neither side addresses whether caselaw requires a participant's pleadings to satisfy this requirement, and the Sixth Circuit's precedent doesn't obviously answer this question.  Because Higgins fails to satisfy the fraud element under standard pleading rules, his claim fails regardless.

4

add up to "intended deception or such gross negligence as to amount to constructive fraud" remains unclear, however—and Higgins cites no authority resting such a finding on bare allegations of mistake.

The Complaint, moreover, doesn't make even a bare allegation that Lincoln intended that Higgins would act upon its representation. Nor does Higgins's Response discuss this element. To be sure, the fact that Lincoln mailed the benefit statement causes one to wonder why—if not for Higgins to act on it. But Higgins hasn't pointed to a single fact that describes why Lincoln would've done so or otherwise supports that inference; nor does he cite any caselaw suggesting the element can be assumed away.

What's more, the Complaint fails to allege that Higgins was unaware of the true facts. His Response asserts that he was unaware of the true facts because the plan was ambiguous. He argues (at 7) that the discussion of "supplemental coverage" in the plan "creates the appearance of additional long-term disability benefits coverage," rendering the maximum benefit amount ambiguous. But "a policy is ambiguous only if it is susceptible to multiple reasonable interpretations, not just because clever lawyers can disagree over the meaning of terms." *Fulkerson v. Unum Life Ins. Co. of Am.*, 36 F.4th 678, 681 (6th Cir. 2022) (quoting *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 269 (6th Cir. 2018)). The plan is not "susceptible to multiple reasonable interpretations."[7] *Id.* So Higgins's argument that the plan is ambiguous fails. And he makes no other argument that he was unaware of the true facts.

Equally important, Higgins doesn't explain how, or why, he reasonably or justifiably relied on the Benefit Election Form statement. Higgins's complaint makes the bare allegation that he "reasonably relied upon the statement made by Lincoln by not purchasing additional long-term disability insurance coverage." Complaint ¶ 34. The plan documents, however, unambiguously entitled Higgins only to $60,000 in benefits. Plan Booklet at 22. "[A] party's reliance can rarely, if ever, be reasonable or justifiable if such reliance is 'inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.'" *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 522 (6th Cir. 2010) (quoting *Sprague*, 133 F.3d at 404). Except in special cases, "reliance on contrary informal communications from the company [are] unreasonable as a matter of law." *Crosby*, 480 F.3d at 431. Here, Higgins does not allege that his case involves special circumstances that might overcome this rule.

Moreover, the reliance must be detrimental, so Higgins must show some harm stemming out of the reliance on the statement. *See Stark v. Mars, Inc.*, 518 F. App'x

---

[7] As Lincoln points out, the "other income" provision cited by Higgins sits under the heading "Income That Will *Reduce* Your Disability Benefit." Reply at 10 (emphasis added); Plan Booklet at 39. These provisions cannot reasonably be read in context to *increase* the maximum benefits under the plan.

5

477, 482 (6th Cir. 2013). He has not. At the hearing on this motion, counsel identified no step Higgins would've taken but didn't because he relied on the Benefit Election Form rather than the plan documents. Transcript of June 2023 hearing (DN 22) [7:17–8:6]. In a similar estoppel case, the "suggestion that but for an apparent reliance on" a misstatement in a plan summary the "Plaintiff and her husband would have enrolled in a different accidental death insurance policy" was deemed "conjectural at best." *Schornhorst v. Ford Motor Co.*, 606 F. Supp. 2d 658, 672–73 (E.D. Mich. 2009). Mere conjecture that Higgins might've bought more coverage during the approximately one-month period between receipt of the benefit statement and filing for disability benefits is not enough to support reliance. "Detrimental reliance in the ERISA estoppel context requires a showing of economic harm," which "must be more than purely speculative." *Stark v. Mars, Inc.*, 879 F. Supp. 2d 752, 767 (S.D. Ohio 2012); *see also O'Connor v. Provident Life & Accident Co.*, 455 F. Supp. 2d 670, 680 (E.D. Mich. 2006) (no detrimental reliance given lack of evidence that plaintiff actually was discouraged from obtaining other life insurance).

\* \* \*

When an estoppel claim concerns an unambiguous agreement, moreover, a plaintiff must establish three additional elements: a "written representation," "plan provisions which, although unambiguous, did not allow for individual calculation of benefits," and "[e]xtraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *Stark*, 518 F. App'x at 481 (quoting *Bloemker*, 605 F.3d at 444). Because Higgins's estoppel claim fails even under the basic five-factor test, the Court needn't rest on the additional factors relevant to unambiguous written representations. But these factors offer an independent basis for rejecting the claim.

The plan unambiguously states that $60,000 is the maximum benefits pay-out. The documents provide for only two plans: the "Core Plan" or the "Buy Up Plan." The Core Plan provides a maximum of $39,996 in annual coverage, and the Buy Up Plan provides a maximum of $60,000 in annual coverage. Plan Booklet at 22; Reply at 9. There is nothing ambiguous about these terms. Therefore, the eight-element rule applies.

And although the Benefit Election Form is a written representation, Higgins identifies no extraordinary circumstances or equities that tip strongly in favor of applying estoppel. Nor does he argue that the plan, though unambiguous, did not allow for individual calculation of benefits.

**3–4. Failure to Respond to Demand for Documents and to Claim for Benefits.** Lincoln's failure to provide Higgins with the "administrative record" in his case does not entitle Higgins to damages under ERISA Section 502(c) (also known as 29 U.S.C. § 1132(c)) or under 29 U.S.C. § 1133 and an implementing regulation, 29 C.F.R. § 2560.503. Complaint ¶¶ 23, 24. Higgins requested *claim* documents and determinations, not *plan* documents—and only a failure to provide *plan* documents triggers statutory penalties under § 1132(c). *See* Lincoln MTD Br. at 17.

6

Section 1132(c)(1) imposes penalties on plan administrators for failure to provide documents that the administrator is required to provide to a beneficiary upon request. 29 U.S.C. § 1024(b)(4) sets out the documents that a plan administrator must provide—essentially those that describe how the long-term benefits plan will function. The provision covers "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." § 1024(b)(4). The "other instruments" provision covers only "those class of documents which provide a plan participant with information concerning how the plan is operated." *Jordan v. Tyson Foods*, 312 F. App'x 726, 734 (6th Cir. 2008) (quoting *Allinder v. Inter-City Prods. Corp. (USA)*, 152 F.3d 544, 549 (6th Cir. 1998)). In effect, § 1132(c)(1) requires the administrator to provide a beneficiary with documents about the plan.

Higgins, however, did not request *plan* documents. Instead, he requested "the administrative record" from Lincoln and MetLife, and then made a renewed demand for benefits. Complaint ¶¶ 19–24. Higgins does not allege that the "administrative record" contains plan documents. Nor does he identify specific plan documents that he sought but didn't receive. In this context the administrative record appears to consist of *claim* documents—documents related to his August 2017 claim for benefits. So Higgins didn't request any of the covered documents that might give rise to damages under § 1132(c)(1) if refused. And the Sixth Circuit has rejected the position that this section requires a plan administrator to provide requested information relating to the resolution of a particular claim—as opposed to the general functioning of a plan. *See Allinder*, 152 F.3d at 548–49.

Higgins's only response is that his request for the "administrative record" includes documents covered by § 1024(b)(4) because the "plan was purportedly modified to reduce the [long-term disability] benefit." Response at 10. First, he says this violates a separate provision: section 1024(d)(1)(I).[8] But that provision governs disclosures to "each employee organization and to each employer"—not to individual employee claimants. *Id.* Higgins did not plead this in the complaint, and it doesn't apply to him: he is an individual employee, not an "employee organization"[9] or an

---

[8] Section 1024(d)(1)(I) requires disclosure of a "summary of any material modification of the plan, upon written request."

[9] The statute defines "employee organization" as "any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan." 29 U.S.C. § 1002(4).

7

"employer."[10]  Second, he never pleaded that Lincoln changed the terms of the plan; he only claimed that it sent him an inaccurate individual-benefits summary. So there is no plausible allegation that the "*plan* was purportedly modified to reduce the [long-term disability] benefit," even assuming that would entitle him to additional documents. Response at 10 (emphasis added).

Higgins also argues that he is entitled to damages under ERISA § 502(c) because Lincoln violated 29 CFR § 2560.503-1. Subsections (f) and (g) of that regulation require the plan administrator to provide a claimant with notification of an adverse benefit determination, the specific reason for the decision, and additional material or information necessary to perfect the claim, among other requirements. Those subsections, however, implement 29 U.S.C. § 1133, not § 1132. *Butler v. United Healthcare of Tenn., Inc.*, 764 F.3d 563, 570–71 (6th Cir. 2014). And the Sixth Circuit has held that "a violation of section 1133 by the plan administrator does not impose liability on the plan administrator pursuant to section 1132(c), because duties of the 'plan' as stated in section 1133 are not duties of the 'plan administrator' as articulated in section 1132(c)." *VanderKlok v. Provident Life & Acc. Ins. Co., Inc.*, 956 F.2d 610, 618 (6th Cir. 1992).

Higgins, for his part, acknowledges in his reply that *VanderKlok* forecloses his § 1133 claim, but asserts these claims "to preserve any claim for appeal." Response at 11.

**5. Jury Demand and Attorney Fees.** Higgins is not entitled to a jury trial for any of these claims. In his Response, Higgins "recognizes that numerous courts have struck a jury trial request holding that ERISA estoppel is an equitable claim for which no right to a jury trial exists." *Id.* Those courts include the Sixth Circuit. "[I]n actions for recovery of benefits under Section 502, there is no right to a jury trial." *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir 1988) (quotation marks omitted). Therefore, Higgins is not entitled to a jury trial. And his derivative request for attorney's fees necessarily fails because all his other claims failed.

## ORDER

The Court grants Lincoln's motion to dismiss Higgins's claims against it. DN 12. Given the Court's previous dismissal of the claims against MetLife (DN 21), this decision terminates the remaining claims in this case. So the Court will separately enter a final judgment in Defendants' favor.

Benjamin Beaton, District Judge
United States District Court

September 1, 2023

---

[10] The statute defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5).

8